**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| LYNDA SUE SORG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:15-CV-342-TLS |
| | ) | |
| CAROLYN COLVIN, | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

The Plaintiff, Lynda Sue Sorg, seeks review of the final decision of the Commissioner of the Social Security Administration denying her application for Disability Insurance Benefits. She claims that she is unable to work due to a combination of physical and mental conditions.

**PROCEDURAL HISTORY**

In November 2012, the Plaintiff filed a claim for disability insurance benefits, alleging disability beginning in June 2012. The state agency responsible for making disability determinations on behalf of the Commissioner denied the Plaintiff's claim initially and upon reconsideration. The Plaintiff sought appeal of those determinations and filed a request for a hearing before an Administrative Law Judge (ALJ). In February 2014, the Plaintiff, who was represented by an attorney, appeared and testified at a hearing before ALJ Patricia Melvin. The ALJ also heard testimony from a vocational expert (VE). In June 2014, the ALJ issued a written decision, in which she concluded that the Plaintiff was not disabled because she was capable of performing work as a cashier, retail marker, or sales attendant. The Plaintiff sought review of the

ALJ's decision by the Appeals Council. In September 2015, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. The Plaintiff seeks judicial review under 42 U.S.C. § 405(g).

## THE ALJ'S FINDINGS

The Social Security regulations set forth a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also* 42 U.S.C. § 423(d)(1)(A) (defining a disability under the Social Security Act as being unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"); *id.* § 423(d)(2)(A) (requiring an applicant to show that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy"). The first step is to determine whether the claimant is presently engaged in substantial gainful activity (SGA). Here, the ALJ found that the Plaintiff was not engaged in SGA, so she moved to the second step, which is to determine whether the claimant had a "severe" impairment or combination of impairments.

An impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). The ALJ determined that the Plaintiff's severe impairments were obesity and osteoarthritis of the right knee. The ALJ relied on the December 19, 2012, consultative exam of Dr. David Ringel, which assessed arthritis of

the right knee. (R. 252–55.) The ALJ concluded that the Plaintiff's neuropathy, which was a residual condition of chemotherapy treatment for rectal cancer, was not a severe impairment because it only minimally affected her ability to engage in gainful employment. The ALJ noted at the hearing on February 25, 2014, that the Plaintiff complained about neuropathy beginning in November 2013, but that the Plaintiff had not mentioned it at a February 7, 2014, follow-up visit for her cancer treatments. The attending physician had instead noted that the Plaintiff was active and able to carry on all pre-disease performance without restriction. Additionally, any neuropathy had not met the duration requirement, and the efficacy of treatment, which had started shortly before the hearing, was not yet known. The ALJ also considered the Plaintiff's mental impairments of panic disorder with agoraphobia and depression, but found that they were also nonsevere. Specifically, the ALJ relied on the Report of Psychological Evaluation completed by the state agency psychologist, Andrew Miller, on December 27, 2012. (R. 256–59.) Out of the four broad functional areas that are set out in the regulations for evaluating mental disorders, the Plaintiff only experienced limitations in one: the area of concentration, persistence, or pace. The limitations in that area were described as mild.

At step three, the ALJ considered whether the Plaintiff's impairments, or combination of impairments, met or medically equaled the severity of one of the impairments listed by the Administration as being so severe that it presumptively precludes SGA. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ concluded that the Plaintiff's osteoarthritis of the right knee did not meet or equal a listed impairment.

Next, the ALJ was required, at step four, to determine the Plaintiff's residual functional capacity (RFC), which is an assessment of the claimant's ability to perform sustained

work-related physical and mental activities in light of her impairments. SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ concluded that the Plaintiff had the RFC to lift or carry twenty pounds occasionally and ten pounds frequently, could stand or walk for six hours in an eight-hour day, as well as sit for six hours in an eight-hour day. The Plaintiff could never climb ladders, ropes, or scaffolds, and only occasionally climb ramps and stairs, crouch, or crawl. However, she could kneel frequently. In making these findings, the ALJ considered the Plaintiff's testimony regarding her symptoms related to her right knee but did not find entirely credible her statements concerning the intensity, persistence, and limiting effects of those symptoms. The ALJ noted that during the Plaintiff's consultative exam, she was able to get on and off the exam table with no trouble, her gait was completely normal, and she needed no assistive devices. She also had good range of motion in her right knee. The ALJ acknowledged the Plaintiff's testimony that she had right knee pain that was aggravated by prolonged standing. The ALJ gave great weight to the Plaintiff's testimony that she could carry fifteen to twenty pounds. She also gave great weight to the state agency mental consultant's opinion that the Plaintiff did not have a severe mental impairment, which she stated was consistent with the psychological consultant's observations. The ALJ assigned no weight to the functional assessment (for less than sedentary range of exertion) completed by Dr. Shalini on November 1, 2013, stating that it was based on the Plaintiff's reports and problems within the last twelve months, while more recent notes from Fort Wayne Medial Oncology and Hematology noted that the Plaintiff was fully active and able to carry on all pre-disease performance without restriction.

Although the Plaintiff had no past relevant work, at the final step of the evaluation, the ALJ determined that the Plaintiff could perform work as a cashier, a retail marker, or a sales

attendant. These jobs were typically performed at the light level, and were unskilled.

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the court conducts a "critical review of the evidence" before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an inadequate discussion of the issues. *Id.*

The ALJ is not required to address every piece of evidence or testimony presented, but

the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). If the Commissioner commits an error of law, remand is warranted without regard to the volume of evidence in support of the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

**ANALYSIS**

The Plaintiff asserts that the ALJ failed to incorporate in her RFC all the limitations from her medically determinable impairments, both severe and nonsevere. For example, the ALJ did not include limitations for cervical flexion, extension, and rotation, for handling and fingering limitations to account for neuropathy, or for needed breaks to handle her colostomy bag changes. The Plaintiff submits that the finding that she could kneel frequently is an "absurdity." (Pl.'s Br. 20, ECF No. 17.) The Defendant responds that this argument fails to account for the ALJ's detailed consideration of the evidence of record, which indicated normal findings for range of motion and gait. The evidence included Dr. Ringel's examination finding of full range of motion in the right knee and wrists, Parkview Hospital records indicating normal range of motion, and oncologist records revealing normal gait and station, and no edema in the extremities.

Upon reviewing the record, the Court is not confident that the ALJ considered all the nonmedical evidence and gave appropriate consideration to the combined effects of the Plaintiff's impairments.

> The ALJ must determine an individual's RFC, or what an individual can still do despite his or her limitations, based upon medical evidence as well as other evidence, such as testimony by the claimant or his friends and family. In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling. However, a determination need not contain a

complete written evaluation of every piece of evidence.
*Murphy v. Colvin*, 759 F.3d 811, 817–18 (7th Cir. 2014) (quotation marks, brackets, and citations omitted). The combination of a claimant's impairments "might well be totally disabling" even if each of the claimant's impairments standing alone is not serious. *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011).

The Plaintiff is correct in noting that the ALJ made no mention in her decision of the Plaintiff's asserted need to take frequent breaks to deal with her colostomy bag. These breaks were the subject of testimony at the hearing, with the Plaintiff identifying the amount of time she devoted to taking care of it on a daily basis. When the ALJ accounted for these limitations (two to three breaks of half hour duration plus three to four additional breaks of five minute duration) in a hypothetical to the VE, the VE stated "that would be too much time off task in breaks, in excess of what would be acceptable in competitive environment." (R. 57.)

The ALJ stated that two Third Party Function Reports completed by the Plaintiff's husband were "inconsistent with disability." (R. 14.) She wrote:

> The claimant's husband completed a Third Party Functional Report on February 16, 2012. He reported that the claimant performed typical housewife duties (cleaning, laundry, cooking and gardening), feeds and cleans up after animals, but cannot stand for more than two hours at a time (Exhibit 1-E). In the second Third Party Function Report completed on March 4, 2013, he stated that the claimant cleans the house, spends two-four hours daily on the computer and spends two-three hours a day doing word search puzzles. He further stated that the claimant did some cooking and watches television (Exhibit 9-E). I find that both reports are inconsistent with disability.

(R. 14.) The ALJ does not provide enough analysis in her decision to permit meaningful judicial review. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). It is unclear why the ALJ believes that these activities are inconsistent with disability. The Court is left to guess, given the

7

placement in the decision, that the ALJ believes the Plaintiff's daily activities are inconsistent with disabling knee pain. Even so, the ALJ does not indicate which physical functions are at issue, such as standing. Nowhere does the ALJ identify how she arrived at the conclusion that the Plaintiff could stand for six hours in an eight-hour day, particularly in light of her testimony that her knee pain was aggravated by prolonged standing, and her husband's report that she could not stand for more than two hours at a time. Neither does the ALJ explain how she arrived at the conclusion that the Plaintiff would be able to kneel frequently. Although it is possible to reconcile all of these matters, the ALJ's decision does not provide a logical bridge that this Court can follow.

Nor did the ALJ, at least on the written record, account for potential differences between the cited activities of daily living and activities in a full-time job, such as flexibility in scheduling, getting help from other persons, and not being held to an employer's minimum standard of performance. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (noting the "critical differences between activities of daily living and activities in a full-time job"). In his second Report, the Plaintiff's husband clarified that the Plaintiff only made boxed dinners or sandwiches; if it was a complete meal, he usually prepared it. (R. 224.) He also stated that she engaged in the chores of cleaning, sweeping, laundry, and some cooking "on [and] off" all day. (*Id.*) There is no indication of how many hours in total she spent doing these chores. The Seventh Circuit has "cautioned that a person's ability to perform daily activities, especially if th[ey] can be done only with significant limitations, does not necessarily translate into an ability to work full-time." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). Although "it is appropriate for an ALJ to consider a claimant's daily activities when evaluating their

8

credibility," it must be "done with care." *Id.* While the Court is mindful that an ALJ's credibility determinations are entitled to special deference, *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006), the ALJ is still required to "build an accurate and logical bridge between the evidence and the result," *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (internal quotation marks omitted); SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996) (an ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements"). Moreover, unsupported judgments regarding a plaintiff's ability to perform the activities of daily living "are not the sort of credibility determinations entitled to deference." *Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016).

Although the ALJ's conclusion that the Third Party Function Reports are inconsistent with disability appear to be directed at the Plaintiff's physical abilities, the amount of time spent on a computer or doing word search puzzles, both of which the ALJ mentions, are not relevant to any of the functional limitations the ALJ addressed, which were all physical in nature. On the other hand, it is doubtful that the ALJ intended to rely on the Third Party Function Reports as indicating what activities the Plaintiff could perform despite her medically determinable mental impairments. The ALJ did not even mention the husband's observations when it came to her mental functioning, especially as it related to her ability to leave the house. The ALJ's analysis contains no reference to the portions of the Reports where the Plaintiff's husband noted that she was afraid to go places by herself (R. 173, 226), and needed to be near a toilet if she left the house (R. 175, 223). He also stated that she liked working in retail, "but now she is afraid to be away from home that long." (R. 223.) He noted that she did not handle stress or changes in routine well.

The ALJ's focus on portions of the Reports, while ignoring others, is problematic. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (noting that the ALJ has an obligation to consider all relevant evidence and cannot "cherry-pick" facts that support a finding of non-disability while ignoring evidence that points to a disability finding). In fact, the only detailed discussion of the Plaintiff's panic disorder with agoraphobia, or depression, was conducted at the second step, when the ALJ was determining which of the Plaintiff's impairments were severe. The analysis of the Plaintiff's mental functioning as it related to her RFC included assigning great weight to the state agency's mental consultative opinion that the Plaintiff did not have a severe mental impairment. The ALJ noted that this was consistent with the psychological consultative evaluation's observations that the Plaintiff had sufficient understanding, good memory of task instructions, adequate concentration and average frustration tolerance, and was likely to have good social interaction. The ALJ did not address the observations from this same report that the Plaintiff's daily routines were not well established, she needed very little support from others to accomplish her daily tasks, which were simple tasks, and that her "ability to sustain these efforts on a daily basis appears to be impaired." (R. 259.) An "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). One of the recognized areas of functioning for mental activities is the ability to respond appropriately to "work pressures in a work setting." 20 C.F.R. § 404.1545(d). The record does not show that the ALJ considered whether or not the Plaintiff's workweek would be interrupted by psychologically based symptoms, despite the Plaintiff's hearing testimony that she left her previous employment because she was having panic attacks at

work which required her to leave her register, and that she continued to have frequent panic attacks. (R. 29; *see also* R. 257 (advising psychologist during Mental Status Examination that she quit her job at Rural King because she was afraid she was going to have panic attacks at work).) Additionally, as stated above, the Plaintiff's husband indicated that handling stress was a problem area for the Plaintiff. The ALJ was required to address this evidence.

## CONCLUSION

For the reasons stated above, the decision of the Commissioner is REVERSED and REMANDED for rehearing.

SO ORDERED on December 20, 2016.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT